Messrs. Maguire and Walkup
of the committee dissented from the report, and submitted, as a minority, the following views : —
The statement of facts as set forth in the majority report is correct, and the points at issue are whether the provisions of section 21 of chapter 298 of the Acts of the yea- 1884 are directory or mandatory in their nature, and whether the names of persons having been placed upon the registration list without the parties appearing in person before the board of registrars, and the votes of such parties having been received at the polls without question, such votes shall subsequently be held illegal. The question is not whether it was the duty or right of the registration officers to register the names of those who did not appear in person before them, nor whether it was the duty of election officers to register such votes, but is, what shall be done with the votes when once having been received ?
While said section 21, when read alone and apart from the other sections of said chapter, would seem to imply that a failure *11 of the applicant to appear in person before the registrars ■would be fatal, yet, when read in connection with sections 20 and 35 of said chapter, and section 9 of chapter 7 of the Public Statutes, our conclusion is that the statute is merely directory.
The general rule for the construction of election statutes has been best stated by Judge Cooley as follows, viz.: —
“ Election statutes are to be tested like other statutes, but with a leaning to liberality, in view of the great public purposes which they accomplish, and, except where they specifically provide that a thing shall be done in a manner indicated and not otherwise, their provisions, designed merely for the information and guidance of the-pfficers, must be regarded as directory only, and the election will not be defeated by a failure to comply with them, provided the irregularity has not hindered any who were entitled from exercising the right of suffrage, or rendered doubtful the evidence from which the result was to be declared.” Constitutional Limitations (5th ed.), 777.
The whole tendency of the decisions, particularly in Massachusetts, where there has been a failure to comply with the laws regulating the forms and proceedings governing elections, has been to regard such provisions as directory in their nature, and not mandatory. The registrars simply determine whether a voter possesses the qualifications for voting required by the Constitution ; they do not create new qualifications, and the mere failure of the registration officer to perform his duty should not render illegal the vote cast by a voter in good faith. “The committee believe that the whole law regulating the forms and proceedings at elections is merely directory, and cannot deprive a voter of rights which he holds under the Constitution.” Methuen, Cushing, S. & J., Election Cases, 433. See also Capen v. Foster, 12 Pick. 485. And while it is argued that in the case at hand there is no excuse, for the voter himself should have known it was his duty to appear in person before the board, yet the tendency of the decisions in Massachusetts, both of the courts and of the committees on elections of the Massachusetts Legislature, has been, not to rigidly adhere to the old maxim, “ignorance of the law excuses no one,” but to put a very liberal construction upon the acts of a voter, endeavoring in all' cases to ascertain and recognize his intention, and, if possible, to carry into effect his acts as he intended, although they may not have been in accordance with the technical requirements of the law. There has been a very marked illustration of this in the case of Whitaker v. Cummings, Loring & Russell’s Election Cases, 360, unanimously reported by a committee of able lawyers of the Massachusetts *12 Senate in 1883, in-which all previous decisions were ably reviewed, which overrules the case of Taft v. Cole, decided in 1858, and which the minority think is clearly and distinctly parallel to the present case.
The provisions of the statute (Pub. Stats., chap. 7, sect. 1) require that officers shall be voted for upon one ballot. In Whitaker v. Cummings the voter took a regular ballot of one party and erased from it all the names but that for candidate for governor, and then took a ballot of the opposing party and erased from it only the name of the candidate for governor, and then placed the two papers in an envelope and deposited it in the ballot-box. It was held that the provisions of the statutes were directory and that said ballot should be counted.
There is no distinction in the line of reasoning between that and the present case. The Public Statutes distinctly set forth that officers should be voted for on one ballot, and the voter is supposed to know it, and if the rule “ ignorance of the law excuses no one ” should be adhered to, the ballot of this man should have been regarded as irregular and cast out.
We believe the decision to have been a just one, and that, in the case at hand, the ignorance of the voter of the provisions of said section 21 requiring him to personally appear, coupled with the fact that the board of registrars voted not to require such person to come before them, and publicly gave notice of their decision, should not render votes cast by such voters illegal.
Furthermore, it is claimed by the majority that section 9 of chapter 7 of the Public Statutes, providing “that no person shall vote at an election whose name has not been previously placed upon such list,” supplements this provision of said section 21 of chapter 298 of the Acts of the year 1884, and, when thus taken together, they constitute a mandatory requirement. We cannot agree with the views of the majority in this respect, and would again refer to the same case of Whitaker v. Cummings, where a certain voter placed his ballot in an envelope different from that required by the statute, and it was received and deposited in the ballot-box without a challenge or objection from the election officers, and it was held that such vote should be counted.
Section 12 of chapter 7 of the Public Statutes says : “ No votes shall be received by the presiding officers at an election provided for in this chapter unless presented for deposit in the ballot-box by the voter in person in a sealed envelope or open and unfolded so that such officers can know that only one ballot is presented.” Section 4 of the same chapter, after providing for self-sealing envelopes, says “such envelopes shall be of uniform size and *13 color, and bear the arms of the Commonwealth, and no other envelopes shall be used at the polls,”
Here we have two positive and direct provisions, — no ballot shall be received unless in a sealed envelope, and the envelopes shall be of uniform size and color and bear the arms of the Commonwealth, and no other envelope shall be used.
A voter used a different envelope from that required by the statute, and the committee, in deciding that the grounds presented for rejecting the vote are not tenable, and that the vote should be counted, say: “It seems, therefore, to be contrary to sound reason and the spirit of our statutes, and the judicial and legislative construction of them, to hold that a ballot cast in good faith and without fraud by a legal voter who has complied with all the provisions of law which entitle him to deposit his ballot, should be rejected because it was deposited in the ballot-box in a common envelope instead of the one prescribed by the statute. Again, it was the duty of the warden to have refused the ballot and directed the voter to use the statute envelope. But no such duty was performed by that officer in this case, and to refuse to count a vote thus ignorantly deposited by a voter would open the door to gross frauds on the part of the election officers.” (Loring & Russell’s Election Cases, 363.) The cases are analogous. In Whitaker v. Cummings it was the duty of the voter to know that the ballot must be cast in a particular way provided by the statute, as here it was the duty of the party to know that he should appear in person before the board of registrars.
In both cases there was a fault on the part of those in official station ; in both cases there was a fault on the part of the voter ; and in both cases the vote was received, and the question was, and is, what shall be done with ⅛? We believe that the decision in Whitaker v. Cummings was wise and proper, and that the reasoning was sound and applicable to the case at hand. The ballots were cast by legal voters who possessed all the qualifications required by the Constitution ; they were cast in good faith, without fraud and without objection, and there has been no question raised but that the election was conducted in a perfectly fair and unobjectionable manner. Moreover, no injustice could have been done the petitioner by this method of registration, inasmuch as it appeared in evidence that names representing both political parties were thus placed indiscriminately upon the list, and that the petitioner, or some one representing him, was present at all the meetings of the board of registrars.
The point involved in the cases cited in the report of the majority of the committee is not the same as that in the case at hand. *14 The question, here is, what is the effect of a vote once received and counted, having been placed upon the register by the proper officers, although irregularly, as alleged? In each one of the cases cited, however, the votes were held illegal because the names of the parties casting the same did not appear upon the list at all, and notably so in the Michigan and Wisconsin cases. Of the Massachusetts cases cited, in Whitaker v. Cummings it appeared that the vote of one Graham, whose name had previously appeared on the list and had before the election subsequently been erased, was received by the election officer and counted. At the same time Graham was not a resident of the ward in which he voted and had no right to vote there, and the decision of the committee that his vote ought not to have been counted was just and reasonable. In the case of Capen v. Foster, 12 Pick. 485, which was a suit brought against the election officers by one whose vote had been refused because his name was not on the list of qualified voters, it was decided that the voter had no cause of action, but it was not decided that if his- name had been placed upon the list irregularly that his vote should not be counted, and that is the question at issue in this case.
It is to be noted that in this case (Capen v. Foster), which has been so frequently cited in the report of the majority, Chief Justice Shaw said: “ The Constitution simply gives the right of elective franchise and prescribes the qualifications of the voters, but leaves the mode and manner of exercising the right open to regulation by the Legislature,” and the head-note of said case is as follows, viz.: “The provision in statute 1821, chapter 110, and statute 1822, chapter 104 (subsequently incorporated in section 9 of chapter 7), requiring that, previous to an election, the qualifications of voters shall be proved and .their names be placed on an alphabetical list or register, is not to be regarded as prescribing a qualification in addition to those which, by the Constitution, entitle a citizen to vote, but only as a reasonable regulation of the mode of exercising the right of voting which was competent to the Legislature to make.”
While, in all the cases cited, the names of the voters did not appear upon the list of voters, yet, in the case at hand, the names of all the voters were placed upon the list by the board of registrars and were open to inspection and criticism for nearly a week previous to election, and there must of necessity be a different construction placed upon a vote cast by a party whose name was placed upon the registration list by the proper officials than upon that cast by a party whose name has never been upon the list.
[Upon the presentation of the report, and the resolution of the majority of the committee to the House, the following resolution was unanimously substituted: —
Whereas, It does not appear from the committee’s report that the votes illegally registered would have changed the declared result; therefore
Resolved, That the petitioner have leave to withdraw.
The resolution so substituted was then unanimously adopted. — House Journal, 1886, p. 346.]
But, assuming for the sake of argument that these votes so cast were illegal, it does not seem to the minority of this committee that sufficient evidence has been presented to warrant the conclusions arrived at by the majority, to the effect that the seat should be declared vacant.
The rule of law that “ the burden of proof rests upon the plaintiff” holds with especial emphasis in contested election cases. McCrary on Elections, § 306.
“An election return cannot be set aside, or the declared result of an election avoided, unless it be proved that illegal votes have been cast against the sitting member, and would have changed the declared result.” Barr et als., petitioners, Loring & Russell’s Election Cases, 254.
Upon the most liberal construction of the evidence presented in favor of the petitioner and against the sitting member, the sitting member would still have a majority of one vote, and your minority feel that, in any event, the seat should not be declared vacant, even upon the construction given to the statute by the majority, unless it be found, after an examination of every voter whose name was thus placed upon the list, that a sufficient number of such votes were cast which, being deducted from the total result as announced, would leave the petitioner a majority of votes. It is not sufficient to show that illegal votes were cast, but it must be shown clearly and positively that a sufficient number of illegal votes were cast to change the result.
We, as a minority of the committee, therefore recommend that the petitioner have leave to withdraw.